AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

FILED
JUN 17 2010
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br>RANDY M. SMITH<br><br>_____<br>*Defendant(s)* | )<br>)<br>)   Case No. EP-10-M-3577-RPM<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 16, 2010__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. sec. 841(a)(1) & (b)(1)(C) | Possession of Heroin with Intent to Distribute |
| 18 U.S.C. sec. 1791(a)(1)(d)(1)(C) | Attempt to Provide Contraband in Prison |

This criminal complaint is based on these facts:

Attached Affidavit of Special Agent Eric Benn

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Eric Benn, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state: __El Paso, Texas__   Richard P. Mesa
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

State of Texas          )
                        )    SS
County of El Paso       )

I, Eric S. Benn, being duly sworn, do hereby depose and state as follows:

1. This affidavit is submitted in support of a criminal complaint against Randy M. Smith being located in the Western District of Texas.

2. I am presently employed as a Special Agent by the Department of Justice, Office of the Inspector General (hereinafter OIG), and have been so employed for approximately twelve and a half (12 ½) years. I have been assigned to the El Paso Area Office of the OIG for twelve and a half (12 ½) years. Prior to my employment with the OIG, I was employed by the Federal Bureau of Prisons (hereinafter BOP) for approximately six and a half (6 ½) years.

3. As a Special Agent with the OIG, I have among my responsibilities that of working with federal and state law enforcement officers in the investigation of violations of bribery and the introduction of contraband, including title 18 of the United States Code.

4. I have personally participated in this investigation and am thoroughly familiar with the information contained in this affidavit either through personal investigation or through discussions with other law enforcement personnel.

5. Based on my experience investigating bribery, I am familiar with the elements of the offense. I have several occasions investigated cases where I have arrested individuals for bribery.

6. Based on my experience and training, and further base upon discussions with BOP personnel and other law enforcement agents, with years of personal experience in the area of bribery investigations within the BOP, I know the following:

    a) That incarcerated persons often utilize their friends, family members, staff members, and/or associates to smuggle contraband into facilities wherein they are housed.

    b) That in order to arrange the smuggling of the contraband items into the correctional facilities wherein they are housed, those persons often utilize telephones to contact their friends, family, and/or associates.

Case Number: 2010-001957
Date:        June 17, 2010

Page 1 of 7

   c) That in a further effort to avoid detection by prison security personnel, those incarcerated persons often attempt to utilize in their smuggling efforts friends, family, and/or associates who might arouse the lease suspicion, i.e. children and/or associates with little or no criminal history.

7. The following information is derived from my personal observations and conversations, surveillance, review of physical evidence, review of reports of, and discussions with other law enforcement officials and personnel of the BOP, who have direct knowledge of the matters covered in those reports, and from conversations with persons, further identified below, who have personal knowledge of the events described herein.

   a) On or about December 23, 2009, the OIG's Chicago Field Office received a letter from an inmate (hereinafter Inmate #1) at the FCI La Tuna. Inmate #1, who had previously assisted the OIG in another facility, wrote that, "There are a couple people here that are doing as Mr. Thompson did." (Note: David Thompson was a Correctional Officer assigned to the FCI Ashland, Kentucky, who pled guilty to violating title 18, U.S.C., § 1951, Hobbs Act extortion under color of official right where he obtained or attempted to obtain $24,200)

   b) On January 7, 2010, the OIG's Houston Area Office received a telephone call from an inmate (hereinafter Inmate #2) at the FCI La Tuna. Inmate #2, who had previously assisted the OIG in another facility, used coded language in the telephone call to the OIG to advise there was another staff member like "Shmeeck." (Note: "Shmeeck" is Shmeeck Fills, a former Correctional Officer at the FCI Beaumont located in Beaumont, Texas, who was convicted following a jury trial of violating title 18 USC 201, Bribery.) Inmate #2 assisted the OIG during the investigation and trial of Fills.

   c) On January 17, 2010, the OIG communicated with Inmate #1, who advised that FCI La Tuna Correctional Officer (CO) Randy Smith was smuggling contraband into the FCI La Tuna for inmates in exchange for money. Specifically, Inmate #1 said CO Smith was smuggling narcotics and tobacco into the Aryan Brotherhood (AB) gang at the FCI La Tuna. Inmate #1 said he/she had witnessed CO Smith provide contraband to inmate N.F., who is the leader of the Aryan Brotherhood at the FCI La Tuna. Inmate #1 said CO Smith smuggled heroin into the FCI La Tuna right before Thanksgiving 2009 and provided the heroin to inmate N.F. Inmate #1 said that CO Smith was also smuggling tobacco into the FCI La Tuna and providing it to inmate N.F. According to Inmate #1, CO Smith receives $100 per pack of bugler tobacco he smuggles into the FCI La Tuna and that CO Smith normally smuggles 12 to 20 packs of bugler tobacco into FCI La Tuna at a time.

   d) On March 29, 2010, Inmate #2 advised that inmate N.F. had told him that CO Smith had previously smuggled contraband into the FCI La Tuna and provided it to inmate N.F. and the AB gang. Inmate #2 said CO Smith told him/her that he was no longer smuggling contraband into the AB gang because he did not like the way the AB gang was handling its business.

e) On April 23, 2010, Inmate #2 said he/she was told that CO Smith is now smuggling contraband into a FCI La Tuna inmate named A.C. Inmate #2 said CO Smith allegedly smuggled 3 packs of tobacco into inmate A.C. on April 19, 2010. Inmate #2 advised that CO Smith is meeting with A.O., A.C.'s girlfriend and mother of his two children, at locations outside the FCI La Tuna to receive the tobacco. Further, Inmate #2 said A.O. also pays CO Smith money for him smuggling the tobacco into inmate A.C. during their meetings.

f) During April 2010, FCI La Tuna investigators provided a copy of a previously intercepted letter from FCI La Tuna inmate J.G., in which J.G. wrote, "So I thought I would drop you a couple of lines to let you know what is on my mind. Well one of our brothers hit up the boys in blue. He said we did not have enough cheese to fuck with him. But he also said if we sent him 2 racks he would get us two cans. The racks sound like a lot, but a rent-a-cop on the team is worth it." A review of inmate J.G.'s FCI La Tuna inmate commissary account information revealed inmate J.G. has received money through a significant number of Western Union wire transfers from a S. B. in Fremont, California, who is the same person to whom J.G. wrote the letter.

g) A review of inmate A.C.'s monitored telephone calls to A.O. from March 2010 to present revealed A.C. and A.O.'s apparent use of coded language to discuss the contraband smuggling scheme, to include A.O.'s receipt of money and A.O.'s payment of money to A.C.'s "Friend." A.O. also talks about receiving text messages from A.C.'s "Friend."

h) On May 24, 2010, Inmate #2 related to agents that, during recent conversations with CO Smith, CO Smith has agreed to smuggle heroin into Inmate #2 at the FCI La Tuna.

i) On June 1, 2010, Inmate #2 advised that CO Smith agreed to smuggle heroin into the FCI for Inmate #2 in exchange for $2,500. Inmate #2 said CO Smith agreed to accept $1,500 up front and $1,000 once the heroin is received by Inmate #2 at the FCI La Tuna.

j) On June 9, 2010, an undercover telephone number was provided to Inmate #2 to pass to CO Smith.

k) On June 12, 2010, Inmate #2 advised that he/she passed the telephone number to CO Smith.

l) On June 15, 2010, Inmate #2 advised that CO Smith was going to contact the undercover agent (UCA) on CO Smith's off days. Further, Inmate #2 said CO Smith had requested the amount heroin and the money CO Smith is to be paid for smuggling the heroin into the FCI La Tuna be doubled. Inmate #2 said CO Smith now wanted to smuggle one (1) ounce of heroin into the FCI La Tuna for Inmate #2 in exchange for $5,000.

m) On June 15, 2010, the UCA received text messages from telephone number (915) 929-2003, which is CO Smith's cellular telephone number.) The text messages between telephone number (915) 929-2003 and the UCA on June 15, 2010, and June 16, 2010, are as follows:

**June 15, 2010**

(915) 929-2003 to UCA at 5:34 pm

Hello... This is jeramias friend... I was told 2 contact u bout glasses and money and somethn else

UCA to (915) 929-2003 at 6:15 pm

Yeah. How do u want to do this? do u want me to call u?

(915) 929-2003 to UCA at 6:18 pm

No... I did want a ask u if it would be possible 2 double up da powder and give me 5 gs? I was told tht u would hve 2 call jerimias brothr and get da cash. back frm him.

UCA to (915) 929-2003 at 6:29 pm

Let me find out. Ill let u know l8r.

(915) 929-2003 to UCA at 6:31 pm

I was wondering if I could pick it up 2 night.

UCA to (915) 929-2003 at 6:35 pm

can't get it all tonite. Tomorrow?

(915) 929-2003 at UCA at 7:01 pm

Kool tomorrow thn

**June 16, 2010**

UCA to (915) 929-2003 at 11:43 am

Got it. Outlet mall parking lot?

Case Number: 2010-001957
Date:        June 17, 2010                                              Page 4 of 7

<u>(915) 929-2003 to UCA at 12:05 pm</u>

Wat tme

<u>UCA to (915) 929-2003 at 12:09 pm</u>

4?

<u>(915) 929-2003 to UCA at 12:10 pm</u>

It might hve 2 b alil ltr

<u>UCA to (915) 929-2003 at 12:13 pm</u>

How late? Not 2 late plz

<u>(915) 929-2003 to UCA at 12:18 pm</u>

Im thinkn lke 6

<u>UCA to (915) 929-2003 at 12:21 pm</u>

6 is cool, no l8r tho bc I got stuf goin on

<u>(915) 929-2003 to UCA at 12:22 pm</u>

Lol its all good so do i...... Where @ da mall u wanna meet

<u>UCA to (915) 929-2003 at 12:56 pm</u>

Idk, near adidas?

<u>(915) 929-2003 to UCA at 1:00 pm</u>

K

<u>UCA to (915) 929-2003 at 1:01 pm</u>

C u thn

<u>(915) 929-2003 to UCA at 1:01 pm</u>

Ur goin 2 b by urself?

Case Number: 2010-001957
Date:       June 17, 2010                                                     Page 5 of 7

<u>UCA to (915) 929-2003 at 1:02 pm</u>

Yeah, u 2 plz

<u>(915) 929-2003 to UCA at 1:03 pm</u>

Oh i will...Ive nvr done ths b4 and iam a lil scared

<u>UCA to (915) 929-2003 at 1:06 pm</u>

Me 2... but im not scary lol

<u>(915) 929-2003 to UCA at 1:12 pm</u>

Haha.... Im not scary either....:)

n) On June 16, 2010, the UCA and CO Smith met in the parking lot of The Shoppes at El Paso. CO Smith accepted $5,000 in cash, one ounce of heroin, and a pair of sunglasses from the UCA. CO Smith accepted the $5,000 in cash as payment for agreeing to smuggle the ounce of heroin and sunglasses into an inmate at the FCI La Tuna. CO Smith was subsequently arrested.

o) Following his arrest, CO Smith waived his rights and voluntarily provided an affidavit admitting to his smuggling activities. CO Smith admitted to smuggling contraband into the FCI La Tuna since early 2009. CO Smith estimated that he smuggled contraband into the FCI La Tuna for inmates approximately 50 times and received approximately $5,000 in exchange for doing so.